IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LORALEE STANTON, )<br>)<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>) Case No. 11-2478-CM<br>)<br>THE GREENS AT SHAWNEE )<br>APARTMENTS MANAGEMENT )<br>COMPANY, LINDSEY )<br>MANAGEMENT COMPANY, INC., and )<br>JOHN DOE 1-3, )<br>)<br>**Defendants.** )<br>) | |

### MEMORANDUM AND ORDER

Defendants The Greens at Shawnee Apartments Management Company ("Greens at Shawnee Apartments") and Lindsey Management Company, Inc. ("Lindsey") seek summary judgment as to plaintiff Loralee Stanton's claims against them (Doc. 28). For the reasons below, the court grants the motion in part and denies the motion in part.

**I.      Factual Background**

Plaintiff rented an apartment from the Greens at Shawnee Apartments in Shawnee, Kansas. Plaintiff claims that defendant Lindsey, its agents, licensees, or contractors painted the stairs and walkways at the Greens at Shawnee Apartments with latex paint not containing a non-slip aggregate. Plaintiff also alleges that traction strips were not installed on the stairs. On December 26, 2010, plaintiff slipped and fell down the stairs from her apartment after the stairs had been painted. Plaintiff claims she fell as a result of defendants' negligence and that her fall resulted in severe and permanent

-1-

injuries.  Plaintiff alleges that defendants negligently created a dangerous condition, negligently failed to warn plaintiff of a dangerous condition, failed to repair the dangerous condition, and violated the Kansas Landlord-Tenant Act.

Defendants argue that plaintiff is not entitled to lost wages beyond the initial six weeks of work plaintiff missed as a result of the fall and that plaintiff's claims for potential overtime should be dismissed as speculative and unsupported by evidence.  Defendants also claim plaintiff can produce no evidence that her injuries are permanent.  Finally, defendant Lindsey contends that plaintiff's claims against it are barred as a result of plaintiff's failure to file a compulsory counterclaim in a separate, prior suit between defendant Lindsey and plaintiff.

**II.     Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "If the moving party meets its burden, then it becomes the nonmoving party's burden to show the existence of a genuine issue of material fact."  *Arnett v. United States*, 927 F. Supp. 1464, 1467–68 (D. Kan. 1996) (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991)). The nonmoving party must then go beyond the pleadings and cite to particular parts of the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" to designate specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1)(A); *see also Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir.1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).[1]  "Unsubstantiated allegations carry no probative weight in summary judgment proceedings."  *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992) (citations omitted).

---

[1] Amendments to Federal Rule of Civil Procedure 56 became effective on December 1, 2010.  Rule 56(c) now contains the opposition requirements that were previously found in Rule 56(e), in addition to two new provisions.  *Mares* and *Celotex* discuss Rule 56(e); however, the decisions are still directly applicable to current Rule 56(c).

In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327.

### III.    Discussion

After reviewing the evidence, the court concludes that genuine issues of material fact remain on several issues. For the reasons below, defendants' motion for summary judgment is granted in part and denied in part.

#### A.    Lost Wages

At the time of the fall, plaintiff was employed at Alliance Data, where she provided sale and customer service assistance. Plaintiff's job duties included answering incoming telephone calls, providing credit card payment processing, and telephone sales services. Plaintiff missed six weeks of work following the fall. Plaintiff returned to work around the week of February 6, 2011. She worked at Alliance Data for two weeks before terminating her employment.

For the purposes of summary judgment, both parties appear to agree that plaintiff missed six weeks of work at Alliance Data after her fall. The parties disagree, however, about whether plaintiff has a valid claim for lost wages beyond those initial six weeks. Defendants claim that plaintiff's claim for lost wages beyond the initial six weeks should be dismissed because "plaintiff was able to return to work, did return to work, and then voluntarily terminated her employment after returning to Alliance Data for two weeks following her December 26, 2010 fall." (Doc. 32 at 6.) Defendants essentially

claim that compensating plaintiff for lost wages beyond the initial six weeks of work places plaintiff in a better position than she would have held had it not been for the fall.

The court is satisfied that plaintiff has shown a genuine issue of fact exists on this issue. Plaintiff's response points to her deposition testimony, where she testified that her injury prevented her from working at Alliance Data. (Doc. 35 at 1.) She also cited to other portions of her deposition testimony where she testified as to how her injury still affects her and the pain she continues to experience. (*Id.* at 1–2.) Although plaintiff did not point to an overwhelming amount of evidence, the court is satisfied that plaintiff has met her burden at the summary judgment stage. Defendants' motion for summary judgment on this issue is denied.

### B. Overtime Claims

Defendants argue that plaintiff's claim for potential overtime should be dismissed because it is based on "speculation and conjecture." (Doc. 32 at 7.) The court finds some merit in defendants' argument that many future overtime claims are based on speculation as overtime is discretionary and subject to fluctuation. *See Battista v. United States*, 889 F. Supp. 716, 725 (S.D.N.Y. 1995) ("[O]vertime is not appropriate in most cases since it is generally speculative whether the employee would have been entitled to it . . . .") (citation omitted). However, as was the case in *Battista*, a plaintiff may be able to meet his or her burden by pointing to overtime records or testimony regarding past overtime offered and worked. *Id*. at 725–26 (noting that testimony at trial established the availability of overtime and also indicated that the plaintiff regularly worked overtime).

Here, plaintiff claims she worked approximately twenty to thirty hours of overtime per week.[2] She admits, however, that overtime hours are subject to fluctuation and are offered at the discretion of the employer. In her response, plaintiff admitted all of defendants' uncontroverted facts and provided

---

[2] In plaintiff's lost wages worksheet (provided by defendants), plaintiff claims she worked thirty hours of overtime per week. (Doc. 29-2.) In her responses to defendants' first interrogatories (also provided by defendants), she stated she worked twenty hours of overtime per week. (Doc. 29-3.)

only three additional facts of her own.  These three facts dealt with how plaintiff's injuries prevented her from working at Alliance Data, their continued effect on her daily life and her work, and the pain associated with her injuries.  (Doc. 35 at 1.)

Noticeably absent from plaintiff's response are any facts pointing to depositions or other parts of the record regarding plaintiff's overtime claim.  Plaintiff fails to point to any testimony or employer records indicating how many overtime hours she regularly works, how much overtime is typically offered by her employer, or any other facts at all on this issue.  Plaintiff's only statement addressing the issue is found in the argument section of her response, where she states the following:

> Plaintiff's potential lost overtime claim is no more speculative than a lost overtime claim in any other case because employers are not required to offer overtime to employees.  Plaintiff's lost overtime claim is simply based on her experience at Alliance Data, [sic] the amount of overtime she would have been offered in the future is a matter for the jury to decide.

(Doc. 35 at 3.)

Plaintiff's response fails to support her argument that her lost overtime claim is "based on her experience at Alliance Data." *See Battista*, 889 F. Supp. at 726 (finding that expert's estimate of future overtime based on actual overtime records for a three-year period was a more accurate estimate than an estimate using one year's W-2 records).  Plaintiff's argument that the jury should determine the amount of overtime she would have been offered in the future is misplaced.  The standard at summary judgment requires plaintiff "to come forward with evidence sufficient for 'a fair-minded jury [to] return a verdict' in her favor." *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 651–52 (10th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  At this point, a jury would have no evidence upon which to make a decision on plaintiff's potential overtime claim, and thus the jury could not return a verdict in plaintiff's favor.  Defendants' motion for summary judgment on this issue is granted.

### C. Permanency of Injuries

Defendants argue that plaintiff's failure to disclose any medical experts means she can produce no evidence regarding the permanency of her injuries. In her Federal Rule of Civil Procedure 26(a)(1) initial disclosures, plaintiff listed Dr. Jacob Stueve as her treating physician; however, she did not disclose Dr. Stueve as an expert under Federal Rule of Civil Procedure 26(a)(2). Rule 26(a)(2)(A) requires a party, in addition to making Rule 26(a)(1) disclosures, to disclose the identity of any witness it may use at trial to testify as an expert. Fed. R. Civ. P. 26(a)(2)(A). If an expert is retained or specially employed to provide expert testimony, Rule 26(a)(2)(B) requires the party to provide a written report. Fed. R. Civ. P. 26(a)(2)(B).

Defendants are correct that Federal Rule of Evidence 701 prohibits lay witness opinion testimony "as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (quotation and quotation marks omitted). However, "[u]nlike persons specifically retained to testify as an expert, treating physicians become involved to treat, not testify." *Goeken v. Wal-Mart Stores, Inc.*, No. 99-4191-SAC, 2001 WL 1159751, at *2 (D. Kan. Aug. 16, 2001); *see also* Fed. R. Civ. P. 26(a)(2) advisory committee's note (distinguishing between treating physicians and retained experts). If a plaintiff's treating physician will not provide expert testimony, then the treating physician need not be disclosed as an expert. *See Potter v. Health Care Auth.*, No. 03-1326-WEB, 2006 WL 580986, at *1 (D. Kan. Mar. 8, 2006).

In *Potter*, the defendant filed a motion to prohibit the plaintiff from utilizing expert witness testimony at trial. *Id*. There, the plaintiff stated her treating physician would not provide expert testimony and, instead, would only testify as a treating physician. *Id*. With little discussion, the court held that the plaintiff need not disclose the treating physician as an expert and was free to call her

treating physician to testify regarding his role as her treating physician. *Id*. at n.1. However, treating physicians may not "testify on matters not based on his or her observations made during the care and treatment of the party . . . ." *Goeken*, 2001 WL 1159751, at *2. If this occurs, the party must comply with the Rule 26(a)(2) expert requirements described above.

In considering whether a treating physician must be disclosed as an expert, the court should consider the particular opinions the physician will express, the basis of the physician's knowledge, and the manner in which the physician obtained that knowledge. *Id*. If the physician will testify regarding observations grounded in personal knowledge, based on his or her treatment of the party, then the treating physician is not considered an expert witness. *Id*. Courts have found a variety of subjects are properly within a treating physician's opinion and not subject to Rule 26(a)(2). *See id.* at *3 (prognosis, extent of present and future disability, and need for future medical treatment); *see also Riddick v. Wash. Hosp. Center*, 183 F.R.D. 327, 330 (D.D.C. 1998) (cause of any medical condition presented in a patient, diagnosis, prognosis, and extent of disability caused by the condition or injury); *Kirkland v. Union Pac. R.R.*, 189 F.R.D. 604, 608 (D. Nev. 1999) (degree of injury, extent of disability in the future, prognosis, and what tasks a patient will be able to perform). In *Goeken*, however, the court found that costs of future medical treatment and its present or future value went beyond the proper scope of a treating physician's testimony. 2011 WL 1159751, at *3.

Here, plaintiff states that Dr. Stueve will testify that her ankle injury was severe and painful enough to prevent her from working at Alliance Data and that the ankle injury is permanent in nature. Plaintiff states that Dr. Stueve's opinion will be based on his "treatment and observation of [plaintiff]." (Doc. 35 at 3.)

Defendants contend that expert testimony is required regarding the permanent nature of plaintiff's injury, but fail to provide any support for this argument. The court disagrees with

defendant.  "A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party."  *Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999).  A treating physician may develop an opinion regarding the diagnosis, prognosis, proper treatment of the injury, or the permanency of a patient's injury during the course of his treatment of the patient.  *See Zurba v. United States*, 202 F.R.D. 590, 592 (N.D. Ill. 2001).  Expert testimony is not required for these topics, and a treating physician's testimony on the same does not render him or her an expert.  *Id*. ("Testifying about such opinions at trial does not convert the treating physician into a retained expert for purposes of Rule 26(a)(2), as the opinions were not acquired or developed in anticipation of litigation or trial.").

It appears that Dr. Stueve performed surgery on plaintiff's ankle on December 31, 2010, and treated plaintiff until March 2011.  To the extent that Dr. Stueve will testify as to the severity and painful nature of plaintiff's ankle injury, as well as the permanency of the injury, the court finds that these opinions are based on his personal knowledge gained from his treatment of plaintiff.  Plaintiff does not state that she intends to call Dr. Stueve to testify as an expert witness, and the court does not require his disclosure as an expert witness.

So long as Dr. Stueve's testimony is limited to opinions he formed during his observation and treatment of plaintiff, the court will permit his testimony.  Plaintiff must establish this foundation before Dr. Stueve is permitted to testify regarding these opinions, however.  Additionally, the court will not permit Dr. Stueve's testimony as to any opinions going beyond the scope of the above-described opinions.  Defendants' motion for summary judgment on this issue is denied.

### D.     Compulsory Counterclaim

Defendant Lindsey filed an unlawful detainer suit against plaintiff in the District Court of Johnson County, Kansas on May 27, 2011.  Plaintiff was served but failed to appear or otherwise

respond in the suit.  Defendant Lindsey claims that plaintiff's claims against it in the instant action are barred because plaintiff failed to assert a compulsory counterclaim in the earlier state court suit. Defendant Lindsey points to plaintiff's deposition testimony in this case, in which she stated she was unable to pay her rent because of the injuries she sustained as a result of defendants' alleged negligence.  Defendant Lindsey claims that plaintiff should have asserted the alleged negligence of defendants as a compulsory counterclaim in the state court unlawful detainer action.

The Kansas compulsory counterclaim statute reads as follows:

> A pleading must state as a counterclaim any claim that, at the time of its service, the pleader has against an opposing party if the claim . . . [a]rises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and . . . does not require adding another party over whom the court cannot acquire jurisdiction.

K.S.A. § 60-213(a)(1)(A)–(B).

The Kansas compulsory counterclaim rule is based on the concept of equitable estoppel, rather than the concept of res judicata. *See U.S. Fid. & Guar. Co. v. Maish*, 908 P.2d 1329, 1340–41 (Kan. Ct. App. 1995).  Applying this theory, if plaintiff knew about the requirement to file a counterclaim in the state court action, but failed to do so, she would be estopped from bringing the current action.

A counterclaim is not compulsory if it does not arise out of the "transaction or occurrence that is the subject matter of the opposing party's claim." K.S.A. § 60-213(a)(1)(A).  Here, if the subject of the state court action was the fall in which plaintiff was injured, then plaintiff's case may be barred. But if the transaction or occurrence is some other event, then plaintiff's case is not barred.

The court disagrees that plaintiff should have filed a compulsory counterclaim in the state court suit—the court does not construe the rule so narrowly.  In the instant case, the "transaction or occurrence" was plaintiff's fall on December 26, 2010, which she claims was due to defendants' negligence.  To the contrary, the "transaction or occurrence" of the unlawful detainer action filed on May 27, 2011 was plaintiff's alleged failure to pay rent owed to defendants.  Accordingly, the court

determines that plaintiff's negligence claim does not arise out of the same transaction or occurrence as defendant Lindsey's prior suit against plaintiff for unlawful detainer.  Plaintiff's failure to assert the alleged negligence of defendants as a defense in the state court action does not bar the immediate action as to defendant Lindsey.  Defendant Lindsey's motion for summary judgment on this issue is denied.

**IT IS THEREFORE ORDERED** that Defendants The Greens at Shawnee Apartments Management Company and Lindsey Management Company, Inc.'s Motion for Summary Judgment (Doc. 28) is granted in part and denied in part.

Dated this 15th  day of October, 2012, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**